```
UNITED STATES DISTRICT COURT           USDC SDNY
SOUTHERN DISTRICT OF NEW YORK          DOCUMENT
                                       ELECTRONICALLY FILED
------------------------------------X  DOC #: _____
                                    :  DATE FILED: October 10, 2017
JOHN ARETAKIS,                      :
                                    :
                     Plaintiff,     :
                                    :      17-cv-6012 (KBF)
           -v-                      :
                                    :      MEMORANDUM
FIRST FINANCIAL EQUITY CORP. and    :      OPINION & ORDER
HILLTOP SECURITIES INC.,            :
                                    :
                     Defendants.    :
                                    :
------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Plaintiff John Aretakis ("plaintiff" or "Aretakis") originally filed this action in the Supreme Court for New York County. (Verified Compl., ECF No. 1-1.) On August 9, 2017, defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Defs.' Notice of Removal, ECF No. 1.) Currently before the Court is defendants' motion to compel arbitration. (ECF No. 7.) For the reasons stated below, defendants' motion is GRANTED.

I.  BACKGROUND

The following facts are undisputed unless otherwise noted. The Court recites only those facts relevant to its review of the present motion.

This action principally relates to two brokerage accounts (collectively, "the Accounts") that Emmanuel Aretakis ("decedent") opened with defendant First Financial Equity Corporation ("First Financial"). To open the Accounts, decedent

executed[1] two separate application forms (the "Customer Agreements"), both of which were also signed by representatives from First Financial:

- On October 15, 2008, decedent applied to open a brokerage account ending "0831". (Decl. of Patrick Butts ("Butts Decl.") Ex. A-1, ECF No. 7-3.)
- On January 25, 2010, decedent applied to open an individual retirement account ("IRA") ending "3862". (Id. Ex. A-2.)

The Customer Agreements both contained clauses requiring the decedent to acknowledge that he had: (1) "received, read and understood the SWST Cash Account Agreement Section of the Customer Information Brochure" (Id. Ex. A-1 at 3, Ex. A-2 at 3); (2) "agree[d] to be bound by the [applicable] terms and conditions" of same (Id.); (3) "read and underst[ood] the pre-dispute arbitration clause located on page 7, in paragraph 35 of the Cash Account Agreement Section of the Customer Information Brochure" (Id. Ex. A-1 at 4, Ex. A-2 at 4); and (4) "agree[d] to resolve any disputes arising out of [the] account by arbitration" (Id.). The arbitration clause referenced in the Customer Agreements states, in relevant part:

> THE CUSTOMER AGREES, AND, BY CARRING AN ACCOUNT FOR THE CUSTOMER, BROKER AGREES, THAT ALL CONTROVERSIES THAT MAY ARISE AMONG THE CUSTOMER, THE BROKER, AND SWST CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT . . . SHALL BE DETERMINED BY ARBITRATION . . .

(Id. Ex. A-3 at 7, Ex. A-4 at 7.) Finally, the Customer Information Brochure contains a clause stating that "[t]he Customer hereby agrees that the Customer

---

[1] As explained more fully below, the Court does not address the validity of the decedent's signatures on the Customer Agreements in resolving this motion to compel arbitration.

2

Agreement will be binding upon their heirs, executors, administrators, personal representatives and assigns." (Id. Ex. A-3 at 1; Ex. 1-4 at 1.)

Emmanuel Aretakis died on April 10, 2014. (Verified Compl. ¶ 54.) On April 3, 2017, plaintiff commenced this action in the Supreme Court for New York County, bringing six claims relating to defendants' alleged mismanagement of the Accounts. (See generally id. ¶¶ 77-192.) Plaintiff's complaint alleges, inter alia, that: (1) the decedent has two accounts managed by defendants (Id. ¶ 1, 25); (2) plaintiff is a beneficiary of the decedent, and therefore has an interest in the Accounts and the underlying assets (Id. ¶ 3-5); and (3) that defendants have mismanaged the Accounts in various respects, causing sizeable losses and monetary damages (See generally id.).

On August 9, 2017, defendants removed the action to this Court on the basis of diversity jurisdiction. (Defs.' Notice of Removal ¶¶ 10-16.) Defendants subsequently moved to compel arbitration on August 18, 2017 pursuant to the Customer Agreements and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (ECF No. 7.) Plaintiff opposed that motion on September 8, 2017 (ECF No. 16), and defendants replied on September 18, 2017 (ECF No. 20.)

II. LEGAL PRINCIPLES

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, (1995) (citations omitted). The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.,

3

governs the enforcement of arbitration agreements "involving commerce", and was enacted "to overcome courts' refusals to enforce agreements to arbitrate." See Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 270 (1995) (citations omitted); see also Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006) ("The [FAA] creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce.") (internal quotation omitted).

Section 2 of the FAA provides that qualifying arbitration agreements are "valid, irrevocable, and enforceable", and Section 3 provides that a federal court, when confronted with a valid arbitration agreement, "<u>shall</u> on application of one of the parties stay the trial of the action until such arbitration has been had." See 9 U.S.C. §§ 2-3 (emphasis added); see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that [the court] <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original). The Supreme Court has held that the statutory language "involving commerce" is broad, and "signals Congress' intent to exercise its Commerce Clause powers to the full." See Allied-Bruce, 513 U.S. at 273 (citation omitted). Accordingly, the FAA applies to transactions that "in fact 'involv[e]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." Id. at 281.

The Second Circuit has noted that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) (internal quotation marks omitted). Whether a dispute should be arbitrated depends on "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Acc. & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (quoting National Union Fire Ins. Co. v. Belco Petroleum Corp., 88 F.3d 129, 135 (2d Cir. 1996)). In deciding a motion to compel arbitration under the FAA, "the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003). "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, we may rule on the basis of that legal issue and avoid the need for further court proceedings." Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 172 (2d Cir. 2011) (internal quotation marks omitted).

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." Ragone v. Atlantic Video at Manhattan Ctr.,

5

595 F.3d 115, 121 (2d Cir. 2010) (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681 (1996)).  The party seeking to compel arbitration "must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" Hines v. Overstock.com, Inc., 380 Fed. App'x 22, 24 (2d Cir. 2010). The moving party need not "show initially that the agreement would be enforceable, merely that one existed." Id. (emphasis in original).  Subsequently, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."  Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010) (citing Green Tree Fin. Corp.—Alabama v. Randolph, 531 U.S. 79, 91-92 (2000)).

"Challenges to the validity of arbitration agreements . . . can be divided into two types.  One type challenges specifically the validity of the agreement to arbitrate.  The other challenges the contract as a whole."  Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 (internal quotations and citations omitted).  The Supreme Court has held that in the second instance, "the issue of the contract's validity is considered by the arbitrator in the first instance." Id. at 445-46. Therefore, to avoid arbitration, a party must successfully challenge the arbitration clause specifically.  Id. at 446 (holding that "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract.").  Otherwise, the FAA requires that the action be stayed pending resolution of arbitration.  See 9 U.S.C. § 3.

III.  DISCUSSION

Based on its review of the Customer Agreements and the arguments raised by the parties, it is clear to the Court that defendants' motion to compel arbitration must be granted.

First, there is no dispute that the Customer Agreements contained clauses explicitly requiring the decedent to acknowledge that he "read and underst[ood] the pre-dispute arbitration clause located on page 7, in paragraph 35 of the . . . Customer Information Brochure", and that he "agree[d] to resolve any dispute arising out of [his] account by arbitration." (Butts. Decl. Ex. A-1 at 4, Ex. A-2 at 4.) As such, it is clear that "there exists a valid agreement to arbitrate." See Hartford Acc. & Indem. Co., 246 F.3d at 226.

Second, there is no dispute that the arbitration clause in the Customer Information Brochure explicitly required the decedent to "agree[] . . . that all controversies that may arise . . . concerning any transaction or the construction, performance, or breach of this or any other agreement . . . shall be determined by arbitration[.]" (Id. Ex. A-3 at 7, Ex. A-4 at 7 (emphasis added).) Plaintiffs' complaint contains six claims concerning defendants' alleged mismanagement of the Accounts opened subject to the Customer Agreements. (See generally Verified Compl. ¶¶ 77-192.) Accordingly, it is clear that the "particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." See Hartford Acc. & Indem. Co., 246 F.3d at 226. Because the contract in question "in fact 'involv[es]'

interstate commerce", Allied-Bruce, 513 U.S. at 281, the FAA applies and this Court must "stay the trial of [this] action until such arbitration has been held." See 9 U.S.C. § 3.

Plaintiff does not dispute the language of the Customer Agreements or the incorporated Customer Information Brochure, but instead argues that the Customer Agreements are invalid because they are unconscionable and/or contracts of adhesion. (See generally Pl.'s Mem. of Law, ECF No. 16.) But as the Supreme Court has made clear, broadside attacks on the validity of a contract as a whole are "considered by the arbitrator in the first instance", and do not preclude enforcement of a severable arbitration clause under the FAA. See Buckeye Check Cashing, 546 U.S. at 445-46. Plaintiff has not raised any challenges specific to the arbitration clause at issue, and therefore the FAA requires that this Court grant defendants' motion to compel arbitration pursuant to those clauses.

IV. CONCLUSION

For the reasons stated above, defendants' motion to compel arbitration at ECF No. 7 is hereby GRANTED in full.

The Clerk of Court is directed to close all open motions and terminate this action.

SO ORDERED.

Dated: New York, New York
October 10, 2017

_____
KATHERINE B. FORREST
United States District Judge

8